IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____x
YVONNE ROSADO,

                                                                        Index No.


                                    PLAINTIFF,

        vs.

                                                                        COMPLAINT
                                                                        [JURY TRIAL
                                                                        DEMANDED]

THE CITY OF NEW YORK, a municipal entity,
POLICE OFFICER RUBEN CUESTA,; "JOHN DOE"
PARTNER OF P.O. CUESTA; "JOHN DOE" NYPD
OFFICER RESPONSIBLE FOR TRAINING P.O.
CUESTA; "JOHN DOE" POLICE OFFICER WHO
LAY ON TOP OF THE PLAINTIFF; "JOHN DOE"
POLICE OFFICERS 1-4;

                                    DEFENDANTS.

_____x


        Plaintiff YVONNE ROSADO, by her attorneys, STECKLOW & THOMPSON,

complaining of the defendants, respectfully alleges as follows:

## I.    PRELIMINARY STATEMENT

        1.      Plaintiff YVONNE ROSADO brings this action for compensatory

damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42

U.S.C. § 1988 for violations of her civil rights, and under New York State law.

        2.      Two NYPD officers came to the landing in the stairwell at 156 East 184th

Street, Bronx NY 10468, in front of Yvonne's apartment.  Yvonne opened the door of her

apartment to see who was outside.  Yvonne's dog, a 4 year old pit bull named Spike,

exited the apartment and walked onto the landing.  Spike stopped, wagging his tail.  One

of the officers, New York City Police Officer Ruben Cuesta, shot Spike in the head as

Yvonne watched in horror.  Yvonne suffered extreme emotional distress.  The police also

pushed Yvonne onto the stairs and held her in a choke hold.  By doing so, the police

caused a lower back injury and bruising to the claimant's back.

3.      Spike died of his injuries, and his body was confiscated by the police.

Yvonne continues to suffer emotional distress from the experience.  She experiences

insomnia, and flashbacks of the event every time she enters and leaves her apartment.

She experiences extreme distress when in the vicinity of the police.

4.      Yvonne has brought this lawsuit seeking justice for herself and for Spike.

## II.    Venue and Jurisdiction

5.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the

Fourth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is

conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) and the

aforementioned statutory and constitutional provisions.

6.      Venue is proper for because the events occurred in this district.

7.      The plaintiff has complied with N.Y. General Municipal Law §50-E by

serving a notice of claim upon the defendants. More than 30 days have elapsed since said

claim was presented and the claim has not been satisfied.

## III.   JURY DEMAND

8.      The plaintiff respectfully demands a trial by jury of all issues in this

matter.

## IV.    THE PARTIES

9.      Plaintiff YVONNE ROSADO ("Yvonne" or "the Plaintiff") is a resident

of the State of New York.

10.     Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

11.     Defendant THE CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, THE CITY OF NEW YORK.

12.     Defendant POLICE OFFICER RUBEN CUESTA ("P.O. CUESTA" or Officer Cuesta") was an officer of the NYPD.

13.     Throughout the incident, POLICE OFFICER RUBEN CUESTA was acting within the scope of his employment.

14.     Defendant PARTNER OF P.O. CUESTA ("PARTNER OF P.O. CUESTA" or "Officer Cuesta's partner") was an officer of the NYPD.  This officer was the partner of P.O. Cuesta on the date of the incident.  Upon information and belief, this individual was either P.O. Ronald Hobson or P.O. Eric Bernard.

15.     Throughout the incident, Officer Cuesta's partner was acting within the scope of his employment.

16.     Defendant "JOHN DOE" NYPD OFFICER RESPONSIBLE FOR TRAINING P.O. CUESTA ("Doe Training Officer") was an officer of the NYPD.  This defendant is the officer or officers responsible for ensuring that, on and before the date of

the incident, P.O. Cuesta was properly trained in the use of firearms and in dealing with domestic animals.

17.     Throughout the incident, Doe Training Officer was acting within the scope of his/her employment.

18.     Defendant "JOHN DOE" POLICE OFFICER WHO LAY ON TOP OF THE PLAINTIFF was an officer of the NYPD.  This officer is the officer who, during the incident, placed his body on top of that of the plaintiff, pressing her down onto the stairs outside her apartment.  Upon information and belief, this person was either P.O. Frank Galindo or P.O. Christopher Chin.

19.     Throughout the incident, Defendant JOHN DOE" POLICE OFFICER WHO LAY ON TOP OF THE PLAINTIFF was acting within the scope of his employment.

20.     Defendant "JOHN DOE" POLICE OFFICERS 1-4 were officers of the NYPD.  These officers were the other officers present at the time force was applied upon the plaintiff, who witnessed or participated in the use of such force.

21.     Throughout the incident, Defendant "JOHN DOE" POLICE OFFICERS 1-4 were acting within the scope of their employment.

22.     The police officer defendants will be referred to collectively as 'The Police Officer Defendants."

23.     The Police Officer Defendants plus the City of New York will be referred to as "The Defendants."

## V.     FACTS COMMON TO ALL CLAIMS

24.     Two NYPD officers, POLICE OFFICER RUBEN CUESTA and PARTNER OF P.O. CUESTA came to the landing in the stairwell at 156 East 184th Street, Bronx NY 10468, in front of Apt 5(J).

25.     The police had been called about two hours earlier by a neighbor, because of a non-violent violation of a "keep-away" order of protection.

26.     By the time Officer Cuesta and Officer Cuesta's Partner arrived, the person they had been called about was long gone.

27.     Officer Cuesta and Officer Cuesta's Partner were standing on the landing, speaking with the caller and her 16 year old daughter.

28.     Officer Cuesta and Officer Cuesta's Partner knew that the person who was the reason for the call had left the area.

29.     The plaintiff, YVONNE ROSADO, opened the door of her apartment to see what was happening outside.

30.     Yvonne's dog, a 4 year old pit bull named Spike, stuck his head out of the partly-opened door.

31.     Officer Cuesta immediately drew his gun and began to point it at Spike.

32.     Spike, unaware of any danger, exited the apartment and walked onto the landing.

33.     Spike was wagging his tail.

34.     Yvonne told Officer Cuesta, "He's friendly, He's friendly!"

35.     Officer Cuesta shot Spike in the head.

36.    Yvonne saw Officer Cuesta fire his gun, and saw Spike collapse on the landing.

37.    Spike was twitching.

38.    A pool of blood began to surround Spike's head.

39.    Yvonne was overwhelmed with grief.

40.    Spike was Yvonne's beloved companion and friend.

41.    Yvonne raised Spike from a puppy, and treated him as a child.

42.    Yvonne embraced Spike as he lay on the floor, trying to comfort him.

43.    She continued to hold him, and call for help, for several minutes.

44.    Spike passed away as Yvonne looked on.

45.    Neither Officer Cuesta nor Officer Cuesta's Partner did anything to help.

46.    They called for more police to come to the location.

47.    Officer Cuesta and Officer Cuesta's Partner did not call for medical assistance.

48.    The police hid on the landing below the fifth floor.

49.    When Yvonne realized that Spike had gone, she went to the landing confront the officers responsible.

50.    "JOHN DOE" POLICE OFFICER WHO  LAY ON TOP OF THE PLAINTIFF pushed Yvonne onto the stairs and lay on top of her for a long period of time.

51.    "JOHN DOE" POLICE OFFICER WHO  LAY ON TOP OF THE PLAINTIFF, by pressing his weight onto Yvonne as she lay on the uneven surface of the

stairs, caused severe pain, bruising and a lower back injury which required treatment at St. Barnabas health center.

52.     For part of this time, "JOHN DOE" POLICE OFFICER WHO  LAY ON TOP OF THE PLAINTIFF kept Yvonne in a choke hold.

53.     Spike died of his injuries, and his body was confiscated by the police.

54.     Yvonne continues to suffer emotional distress from the experience.  She experiences insomnia, and flashbacks of the event every time she enters and leaves her apartment.  She experiences extreme distress when in the vicinity of the police.

55.     While the loss of Spike's companionship is the most important thing to Yvonne, she understands that the defendants may claim that Spike was nothing more than a piece of property.  Even viewed so cold-bloodedly, Yvonne lost a great deal when Spike was taken away from her.  Yvonne had Spike for approximately 3 years and nine months.  During that time the claimant invested $50 per week in Spike's care and maintenance.  In addition to the emotion loss of being deprived of a pet who was the claimants dear friend, the claimant lost the amount she invested in Spike over these years, which equals or exceeds $9,750.00.   In addition, Yvonne lost the anticipated future value of ownership of Spike for his normal lifespan.

56.     Yvonne claims compensation for the amount necessary to move to another apartment, which is necessary to relieve the distress the claimant feels whenever she enters and exists the apartment, walking over the spot where Spike was shot and died.

57.     The officers in question were clearly inadequately trained in the use of guns.

58.     Officer Cuesta clearly had insufficient training, or incorrect training, in dealing with domestic animals and the use of firearms.

59.     Officer Cuesta drew his weapon when nothing more than Spike's head and shoulders were outside the door of Yvonne's apartment.

60.     At that time, there was no threat.

61.     Yet, Officer Cuesta had already apparently committed himself to the use of deadly force.

62.     The City of New York either trained Officer Cuesta to make such hasty deadly force decisions, or it failed to provide him sufficient and correct training so that he might not commit to killing before a threat even materialized.

63.     When Officer shot Spike, Spike was on the landing, wagging his tail.

64.     Spike was not charging or showing any signs of attacking anyone.

65.     Yet, Officer Cuesta shot Spike.

66.     Officer Cuesta's failure to pause to assess the situation is conduct that is inherently dangerous, which the City of New York should have addressed through training.

67.     When Officer Cuesta fired at Spike, he did so in an enclosed space in which at least three other people were located.

68.     Immediately behind the dog was a 16 year old girl, who Officer Cuesta could have killed if he didn't hit Spike.

69.     Firing his weapon put all these people at risk.

70.     Officer Cuesta failed to assess the situation properly.

71.     Officer Cuesta created a risk of deadly injury to people, when it was not necessary to do so.

72.     Spike didn't need or deserve to be shot.  But the 16 year old girl didn't need or deserve to be shot either.

73.      The City of New York either trained Officer Cuesta to make such hasty deadly force decisions, or it failed to provide him sufficient and correct training to avoid putting innocent people in danger because of his own subjective fear of dogs.

74.     The City of New York appears to train its officers that if they subjectively feel fear, however minor the cause of that fear may be, they are entitled to kill anyone or anything who makes them have that subjective feeling.  The City does not train its officers that they have a duty to question whether there is a rational basis for their fear before using deadly force.  This is a bad policy, that kills innocent people.  In this case, it killed Spike.  It could have killed a 16 year old girl.  The City should take responsibility for the bullets fired by its officers.

## VI.    Claims for Relief

### FIRST CLAIM FOR RELIEF

### VIOLATION OF CONSTITUTIONAL RIGHTS
### PURSUANT TO 42 U.S.C. § 1983
### (AGAINST ALL DEFENDANTS)

75.     Defendant The City of New York and its agents, servants and employees, including, but not limited to, The Police Officer Defendants, deprived Yvonne of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, in violation of 42 U.S.C. § 1983.

76.     All of the aforementioned acts of The Police Officer Defendants were carried out under the color of state law.  The acts complained of were carried out by The Police Officer Defendants in their capacities as police officers, with all of the actual and or apparent authority attendant thereto. The acts complained of were carried out by The Police Officer Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of Defendant The City of New York and the NYPD, all under the supervision of ranking officers of said department. The Police Officer Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

77.     As a result of the above constitutionally impermissible conduct, the Yvonne was caused to suffer harm.

78.     The plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorneys' fees and costs.

### SECOND CLAIM FOR RELIEF

### DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS OF LAW
### PURSUANT TO 42 U.S.C. § 1983
### (AGAINST RUBEN CUESTA)

79.     The plaintiff incorporates all allegations of the complaint herein.

80.      The Defendants, individually and collectively, were acting under color of state law when they performed the acts complained of herein.

81.      Plaintiff's dog, Spike, was allegedly regarded as property under the law, even though the plaintiff loved Spike like a member of the family.

82.     Defendant Ruben Cuesta deprived the plaintiff of Spike by killing him.

83.     Defendant Ruben Cuesta did not provide any procedure by which the plaintiff could object to and prevent Spike's killing.

84.     Instead, Defendant Ruben Cuesta summarily and without warning shot and killed Spike.

85.     In so doing, Defendant Ruben Cuesta deprived the plaintiff of her rights to due process.

86.     As a result, the plaintiff suffered physical and emotional injuries, monetary losses, and loss of the present and future value of her property,  as well as other damages to be set forth and proved at trial.

87.     The plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF

#### EXCESSIVE FORCE/UNLAWFUL SEIZURE
#### PURSUANT TO 42 U.S.C. § 1983

88.     The plaintiff incorporates all allegations of the complaint herein.

89.     The Defendants, individually and collectively, were acting under color of state law when they performed the acts complained of herein.

90.     Defendant John Doe Police Officer Who Lay On Top of The Plaintiff used excessive force on the plaintiff .

91.     As a result, the plaintiff suffered physical and emotional injuries, as well as other damages to be set forth and proved at trial.

92.     The plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorneys' fees and costs.

### FOURTH CLAIM FOR RELIEF

**EXCESSIVE FORCE/UNLAWFUL SEIZURE**
**PURSUANT TO 42 U.S.C. § 1983**
**(AGAINST DEFENDANT RUBEN CUESTA)**

93.     The plaintiff incorporates all allegations of the complaint herein.

94.     The Defendants, individually and collectively, were acting under color of state law when they performed the acts complained of herein.

95.     Defendant Ruben Cuesta seized Yvonne by firing at Spike in Yvonne's presence.

96.     As a result, the plaintiff suffered physical and emotional injuries, as well as other damages to be set forth and proved at trial.

97.     The plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**

**FAILURE TO INTERVENE**
**PURSUANT TO 42 U.S.C. § 1983**
**(AGAINST THE POLICE OFFICER DEFENDANTS)**

98.     The plaintiff incorporates all allegations of the complaint herein.

99.     The Defendants, individually and collectively, were acting under color of state law when they performed the acts complained of herein.

100.     Each of the Police Officer Defendants were present when Defendant Ruben Cuesta and Defendant John Doe Police Officer Who Lay On Top of The Plaintiff violated Yvonne's constitutional rights.

101.     Each had the ability and the duty to prevent the harm to Yvonne, and failed to do so.

102.     As a result, the plaintiff suffered physical and emotional injuries, as well as other damages to be set forth and proved at trial.

103.    The plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorneys' fees and costs.

### FIFTH CLAIM FOR RELIEF

#### ASSAULT
#### (AGAINST RUBEN CUESTA)

104.    The plaintiff incorporates all allegations of the complaint herein.

105.    The Defendants, individually and collectively, were acting under color of state law when they performed the acts complained of herein.

106.    Defendant Ruben Cuesta engaged in physical conduct which placed Yvonne in immediate fear of harmful contact.

107.    As a result, the plaintiff suffered physical and emotional injuries, as well as other damages to be set forth and proved at trial.

108.    The plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorneys' fees and costs.

### SIXTH CLAIM FOR RELIEF

#### BATTERY

109.    The plaintiff incorporates all allegations of the complaint herein.

110.    The Defendants, individually and collectively, were acting under color of state law when they performed the acts complained of herein.

111.    Defendant John Doe Police Officer Who Lay On Top of The Plaintiff used excessive force on the plaintiff, which was a battery.

112.    As a result, the plaintiff suffered physical and emotional injuries, as well as other damages to be set forth and proved at trial.

113.    The plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorneys' fees and costs.

### SEVENTH CLAIM FOR RELIEF

#### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### (AGAINST RUBEN CUESTA)

114.    The plaintiff incorporates all allegations of the complaint herein.

115.    The Defendants, individually and collectively, were acting under color of state law when they performed the acts complained of herein.

116.    Defendant Ruben Cuesta engaged in intentional outrageous conduct when he shot and killed Spike.

117.    As a result, the plaintiff suffered physical and emotional injuries, as well as other damages to be set forth and proved at trial.

118.    The plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorneys' fees and costs.

### EIGHTH CLAIM FOR RELIEF

#### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
#### (AGAINST RUBEN CUESTA)

119.    The plaintiff incorporates all allegations of the complaint herein.

120.    The Defendants, individually and collectively, were acting under color of state law when they performed the acts complained of herein.

121.    Defendant Ruben Cuesta engaged in outrageous conduct when he shot and killed Spike.

122.    As a result, the plaintiff suffered physical and emotional injuries, as well as other damages to be set forth and proved at trial.

123.    The plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorneys' fees and costs.

### NINTH CLAIM FOR RELIEF

### NEGLIGENCE
### (AGAINST RUBEN CUESTA)

124.    The plaintiff incorporates all allegations of the complaint herein.

125.    The Defendants, individually and collectively, were acting under color of state law when they performed the acts complained of herein.

126.    Defendant Ruben Cuesta was negligent in handling and using his gun, killing Spike in Yvonne's presence.

127.    As a result, the plaintiff suffered physical and emotional injuries, as well as other damages to be set forth and proved at trial.

128.    The plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorneys' fees and costs.

### TENTH CLAIM FOR RELIEF

### RESPONDEAT SUPERIOR

129.    The plaintiff incorporates all allegations of the complaint herein.

130.    The Defendants, individually and collectively, were acting under color of state law when they performed the acts complained of herein.

131.    The City of New York employed The Police Officer Defendants.

132.    The acts of the Police Officer Defendants which caused harm to Yvonne were done within the scope of these officers' employment.

133.    As a result, the plaintiff suffered physical and emotional injuries, as well as other damages to be set forth and proved at trial.

134.    The plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorneys' fees and costs.

## ELEVENTH CLAIM FOR RELIEF

### NEGLIGENT TRAINING AND SUPERVISION
### (AGAINST THE CITY OF NEW YORK)

135.    The plaintiff incorporates all allegations of the complaint herein.

136.    Defendant The City of New York failed to use reasonable care in the hiring and retention of the Defendant Police Officers.

137.    Defendant The City of New York failed to use reasonable care in the training and supervision of the INDIVIDUAL DEFENDANTS, permitting and enabling them to engage in the wrongful conduct heretofore alleged in this Complaint. As a result, Yvonne was harmed.

138.    As a result, the plaintiff suffered physical and emotional injuries, as well as other damages to be set forth and proved at trial.

139.    The plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorneys' fees and costs.

## TWELFTH CLAIM FOR RELIEF

### NEGLIGENT TRAINING AND SUPERVISION

140.    The plaintiff incorporates all allegations of the complaint herein.

141.    The Defendants, individually and collectively, were acting under color of state law when they performed the acts complained of herein.

142.     Defendant John Doe NYPD Officer Responsible for Training P.O. Cuesta failed to train P.O. Cuesta not to fire his weapon without cause, and not to fire his weapon in close proximity to people such as Yvonne who might be injured.

143.     As a result, the plaintiff suffered physical and emotional injuries, as well as other damages to be set forth and proved at trial.

144.     The plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorneys' fees and costs.

### THIRTEENTH CLAIM FOR RELIEF

### NEGLIGENT TRAINING AND SUPERVISION

145.     The plaintiff incorporates all allegations of the complaint herein.

146.     Defendant The City of New York failed to use reasonable care in the hiring and retention of The Police Officer Defendants.

147.     Defendant The City of New York knew, or should have known in the exercise of reasonable care, the propensities of The Police Officer Defendants to engage in the wrongful conduct heretofore alleged in this Complaint. As a result, the Yvonne was harmed.

148.     As a result, the plaintiff suffered physical and emotional injuries, as well as other damages to be set forth and proved at trial.

149.     The plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorneys' fees and costs.

WHEREFORE it is respectfully requested that the Court:

        [a] Award appropriate compensatory and punitive damages.

        [b] Empanel a jury.

        [c] Award attorney's fees and costs.

        [d] Award such other and further relief as the Court deems to be proper and in the interest of justice.


DATED:      New York, New York
             December 16, 2016


                                     //s//
                              DAVID A. THOMPSON  [dt3991]
                              STECKLOW & THOMPSON
                              ATTORNEYS FOR PLAINTIFF
                              217 Centre Street, 6th Floor
                              Phone:  (212) 566-8000
                              Fax:     (212) 202-4952
                              dave@sctlaw.nyc



OCA Official Form No.: 960

# AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION PURSUANT TO HIPAA
**[This form has been approved by the New York State Department of Health]**

| Patient Name | | |
|---|---|---|
| Yvonne Rosado | ████ | ████ |
| Patient Address | | |
| 156 East 184th Street Bronx NY 10468 | | |

I, or my authorized representative, request that health information regarding my care and treatment be released as set forth on this form:

In accordance with New York State Law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), I understand that:

1. This authorization may include disclosure of information relating to **ALCOHOL** and **DRUG ABUSE, MENTAL HEALTH TREATMENT**, except psychotherapy notes, and **CONFIDENTIAL HIV\* RELATED INFORMATION** only if I place my initials on the appropriate line in Item 9(a). In the event the health information described below includes any of these types of information, and I initial the line on the box in Item 9(a), I specifically authorize release of such information to the person(s) indicated in Item 8.

2. If I am authorizing the release of HIV-related, alcohol or drug treatment, or mental health treatment information, the recipient is prohibited from redisclosing such information without my authorization unless permitted to do so under federal or state law. I understand that I have the right to request a list of people who may receive or use my HIV-related information without authorization. If I experience discrimination because of the release or disclosure of HIV-related information, I may contact the New York State Division of Human Rights at (212) 480-2493 or the New York City Commission of Human Rights at (212) 306-7450. These agencies are responsible for protecting my rights.

3. I have the right to revoke this authorization at any time by writing to the health care provider listed below. I understand that I may revoke this authorization except to the extent that action has already been taken based on this authorization.

4. I understand that signing this authorization is voluntary. My treatment, payment, enrollment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

5. Information disclosed under this authorization might be redisclosed by the recipient (except as noted above in Item 2), and this redisclosure may no longer be protected by federal or state law.

6. **THIS AUTHORIZATION DOES NOT AUTHORIZE YOU TO DISCUSS MY HEALTH INFORMATION OR MEDICAL CARE WITH ANYONE OTHER THAN THE ATTORNEY OR GOVERNMENTAL AGENCY SPECIFIED IN ITEM 9 (b).**

7. Name and address of health provider or entity to release this information: *ST BARNABAS HOSP 4422 THIRD AVE BRONX NY 10457*

8. Name and address of person(s) or category of person to whom this information will be sent:
**Office of Corporation Counsel 100 Church Street New York N.Y. 10007**

9(a). Specific information to be released:
☐ Medical Record from (insert date) _____ to (insert date) _____
☑ Entire Medical Record, including patient histories, office notes (except psychotherapy notes), test results, radiology studies, films, referrals, consults, billing records, insurance records, and records sent to you by other health care providers.
☐ Other: _____

Include: (Indicate by Initialing)
_____ Alcohol/Drug Treatment
_____ Mental Health Information
_____ HIV-Related Information

**Authorization to Discuss Health Information**

(b) ☐ By initialing here _____ I authorize _____
    Initials        Name of individual health care provider
to discuss my health information with my attorney, or a governmental agency, listed here: _____
_____
(Attorney/Firm Name or Governmental Agency Name)

| 10. Reason for release of information: ☐ At request of individual ☐ Other: | 11. Date or event on which this authorization will expire: *1/1/2020* |
|---|---|
| 12. If not the patient, name of person signing form: | 13. Authority to sign on behalf of patient: |

All items on this form have been completed and my questions about this form have been answered. In addition, I have been provided a copy of the form.

X _____      Date: _____
Signature of patient or representative authorized by law.

\* Human Immunodeficiency Virus that causes AIDS. The New York State Public Health Law protects information which reasonably could identify someone as having HIV symptoms or infection and information regarding a person's contacts.

## DESIGNATION OF AGENT FOR ACCESS TO SEALED
## RECORDS PURSUANT TO NYCPL 160.50[1][d]

I, T. YVONNE ROSADO, Date of Birth ████████,
SS# ████████ pursuant to NYCPL § 160.50[1][d], hereby designate ZACHARY
CARTER, Corporation Counsel of the City of New York, or his authorized representative, as
my agent to whom records of the criminal action terminated in my favor entitled People of the
State of New York v._____, Docket No. or Indictment No. _____,
in Criminal Court, County of Bronx, State of New York, relating to
my arrest on or about _____, may be made available for use
in a Civil Action.

I understand that until now the aforesaid records have been sealed pursuant to
CPL § 160.50, which permits those records to be made available only (1) to persons designated
by me, or (2) to certain other parties specifically designated in that statute.

I further understand that the person designated by me above as a person to whom
the records may be made available is not bound by the statutory sealing requirements of CPL
§ 160.50.

The records to be made available to the person designated above comprise all
records and papers relating to my arrest and prosecution in the criminal action identified herein
on file with any court, police agency, prosecutor's office or state or local agency that were
ordered to be sealed under the provisions of CPL § 160.50.

I further authorize the release of a list from the New York City Police Department
that identifies all my prior arrests by date of arrest, charge(s) and disposition, including all sealed
arrests.

_____
SIGNATURE

STATE OF NEW YORK       )
                       : SS.:
COUNTY OF NEW YORK      )


On this 16TH day of DECEMBER , 2016, before me personally came T. YVONNE ROSADO, to
me known and known to me to be the individual described in and who executed the foregoing
instrument, and SHE acknowledged to me that SHE executed the same.

_____
NOTARY PUBLIC

DAVID ALLEN THOMPSON
NOTARY PUBLIC-STATE OF NEW YORK
No. 02TH6208118
Qualified in New York County
My Commission Expires June 22, 2013
May 18, 2011